NelsoN, J.,
delivered the opinion of the Court.
John W. Jones admits, in his answer to this insolvent bill, that he sold the lots in LaGrange, described in the bill and answer, to D. B. Fields in his lifetime, for the price of one thousand, or twelve hundred dollars, and executed a title bond therefor in the year 1858 or 1859. He says that the first payment for the land was made in cash, and that there were two deferrred payments to be made in one and two years, for which the vendee executed his promissory notes; that the notes were paid, but no deed was executed; that shortly after the payment of the last note, he loaned to D. B. Fields $468.06, for which a note was executed 27th March, 1861, payable on or before the first day of January thereafter; and that it was expressly agreed at the time when said note was executed that he should retain the legal title to the lots as a security for said note, until the payment of the same. He states the same facts in his deposition, and insists in his answer that the note shall be paid in full out of the proceeds of the sale of the land, and not pro rata, and that this claim is superior to the widow’s claim of dower.
1. On the first point we hold, that as he retained the legal title, the parol contract was sufficient to convert the transaction into a mortgage, upon the authority of Jones v. Jones, 1 Head, 105, and Williams v. Love, 2 Head, 80. In the case first cited, it was said that “the law is well settled that though a conveyance be *396 absolute in its terms, it may be shown by parol proof to be a mortgage; and we can perceive no valid reason wby the same thing may not be done in the case of a title bond or other executory contract:” 1 Head, 108. It is unnecessary to recite at length the case last cited, and we merely quote one of the principles determined in it, pp. 84-86, as condensed in the syllabus of the Reporter: “If two persons are the joint owners of lands, but the legal title is in one of them, and the other, who has.a mere equity in the land, is indebted to the one who has the legal title, the latter can not be forced to part Avith.the legal title until the discharge of his indebtedness to him and until he is freed from liability for him:” 2 Head, 80. These cases rest upon the same equitable doctrine, in relation to the statute of frauds, as our numerous decisions holding that a resulting trust may be created by parol, which are too familiar to require references.
2. Holding that J. W. Jones retained the legal title as a mortgage to secure the payment of the notes, it follows that the Avidow of D. B. Fields, the equitable owner of the land, is entitled to dower under the Code, section 2399, which declares, in addition to the provision in the previous section, that the widow “shall also be entitled to dower in lands mortgaged, or conveyed in trust to pay debts, when the husband dies before foreclosure of the mortgage or sale under the deed.”' This section makes no distinction as to the nature of the debt, or to the character of the mortgage, and embraces constructive mortgages as well as mortgages in fact, and changes the law as ruled pre- *397 yiously to tbe Code, requiring the encumbrances to be paid before the allotment of dower: See 8 Hum., 537; lb., 518; 7 Hum., 77; lb., 72; 1 Hum., 408.' The Code gives the widow the preference over the mortgage creditor in this case. J. W. Jones, although he retained the legal' title, is 'nothing more. The vendor’s lien was satisfied, and under the verbal contract stated in his answer and deposition, he held the title as a security merely. The widow’s right to dower prevails against his, but his right is superior to that of other creditors, and he is entitled to a decree directing the sale of so much of the lots as • may be necessary to satisfy his demand, subject to the widow’s dower, and, if necessary, to a sale of the interest in remainder.
3. The real property appears to consist of nine lots in the town of LaGrange, adjoining each other, upon which are situate the mansion house and out-houses, occupied and enjoyed by the intestate at the time of his death. The commissioners appointed to allot and set apart the dower, reported that, upon examination, they found the property could not be so divided as to allot one-third part in value as dower, in consequence of the situation of the improvements upon said lots, and, thereupon, the Chancellor decreed that the widow is entitled “to the use, possession and enjoyment of the dwelling house, out-houses and improvements on the said lot of land, together- with a sufficient amount of the land for the purposes of a garden, not to exceed, in all, with the land covered by the dwelling, house, out-houses and improvements, one *398 acre, for and during the term of her natural life.” No exception appears to have been taken to the report ; but the complainant and part of the defendants, viz.: Picket Wormley & Co., and J. L. Pulliam, administrator of A. L. Greene, deceased, excepted to the decree of the Chancellor and prosecute this appeal.
In that part of the decree appointing commissioners to allot and set apart the dower, it was ordered, “that Thomas B. Firth and J. J. Pulliam, freeholders of said county, be appointed commissioners, in conjunction with the county surveyor, or some other competent surveyor, to allot and set off to said defendant Eliza Ann Fields, one-third part in value of said land for her dower, and report to the next term of the Court.” The report is signed by the two commissioners only, who are named in the decree, and does not show that they acted either with the county or any other surveyor; and the vagueness of the decree, which does not define the boundaries of the garden, alloted under the loose description of one acre, furnishes almost conclusive evidence that no surveyor acted with the commissioners. The Code, section 2411, requires that two freeholders, or householders of the county, unconnected by affinity or consanguinity with those interested in the estate of the deceased, shall be appointed in connection with the surveyor, or his deputy, or any competent person to act as surveyor, to set apart the dower.
The order shows that the persons appointed ^yere '"freeholders, but does not show that they were not related. Although the presumption is always in favor of the legality and regularity of the action of a judi *399 cial tribunal, the requirements of the statute are so special that we hold that the order or decree appointing commissioners, should not only specify the surveyor, deputy surveyor, or other competent person, as well as the two commissioners with whom he is to act, but should also show upon its face that the persons appointed are freeholders, or householders, unconnected by affinity or consanguinity with those interested in the estate of the deceased. And the report of the commissioners should in all cases contain a plat of the dower and set forth the same by metes and bounds, as required in section 2417 of the Code.
Here the boundaries of the nine lots are not stated in the pleadings, or shown in the evidence, and the record furnishes no means to this Court of ascertaining the quantity of acres or feet. The wisdom of the statute in requiring a survey and plat, is so obvious that it needs no illustration. Its object was to prevent litigation by ascertaining with accuracy the right? of the parties.
There is nothing in the allegations, or in the proofs in this case, to show that the buildings constitute the bulk of the estate, or are so constructed that the different families may reside under the same roof without inconvenience, so as to bring the case within the rule laid down in Vincent v. Vincent, 1 Heis., 339. Let a decree, therefore, be ' pronounced in which the lost bond mentioned in the bill and answer shall be set up. Let it be declared that the widow is entitled to dower in preference to the claims of John W. Jones or any other creditor, but that, after allotting *400 dower, the claim of Jones shall be paid in full by the sale of the mortgaged property, subject to the .estate in dower, or so much thereof as may be necessary. And let the cause be remanded to the Chancery Court at Somerville, where the Chancellor will appoint commissioners and cause dower to be assigned in the mode required by law, giving to the widow the mansion house and other improvements specified in the statute, and one-third in value of the land, without including them in the estimate of value, for and during the term of her natural life.
The Chancellor will order such accounts, and make such further decrees as may be necessary to administer the estate as an insolvent estate according to the prayer of the bill.
The costs of this cause .in this Court will- be paid by the complainant out of any assets which have come or may come into his hands, and the costs of the Court below will be adjudged as the Chancellor may direct.
Reverse the decree and remand the cause.